IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HENRY RUBY,<br><br>                Plaintiff,<br><br>v.<br><br>DISH NETWORK, LLC,<br><br>                Defendant. | CIVIL ACTION<br>No. 18-0400 |

## ORDER

**AND NOW**, this 25th day of March 2019, upon consideration of Defendant DISH Network LLC's ("Defendant") Motion for Summary Judgment (Doc. No. 28), Plaintiff's Response in Opposition (Doc. No. 46), Defendant's Reply (Doc. No. 48), Defendant's Supplemental Motion for Summary Judgment (Doc. No. 69), Plaintiff's Supplemental Response (Doc. No. 72), and Defendant's Supplemental Reply (Doc. No. 77), it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. Nos. 28, 69) is **DENIED**.[1]

---

[1] On January 31, 2018, Plaintiff Henry Ruby ("Plaintiff" or "Ruby") sued Defendant DISH Network LLC ("Defendant" or "DISH") for violating the Telephone Consumer Protection Act ("TCPA") for allegedly making harassing telephone calls to his cellular phone without his consent. (Doc. No. 1.) DISH is a company that provides satellite television services. It retained Convergent Outsourcing, Inc. ("Convergent"), a company not named as a Defendant, for debt-collection services. Plaintiff contends that Convergent used an automated telephone dialing system ("ATDS") to contact him in violation of the TCPA. (Doc. No. 1 ¶ 13.) He further claims that DISH is liable for the acts of Convergent because Convergent acted as DISH's agent. Ruby seeks actual damages pursuant to 47 U.S.C. § 227(b)(3)(B); statutory damages of $500 per phone call pursuant to 47 U.S.C. § 227(b)(3)(B); treble damages of $1500 per telephone call pursuant to 47 U.S.C. § 227(b)(3); or alternatively that amount for each call made after Defendant was notified that they were calling the wrong person; and injunctive relief pursuant to 47 U.S.C. § 227(b)(3). (Doc. No. 1 at 5.)

On August 23, 2018, DISH filed a Motion for Summary Judgment. (Doc. No. 28.) Plaintiff filed a Response in Opposition. (Doc. No. 46.) On October 30, 2018, Defendant replied in Support of his Motion for Summary Judgment. (Doc. No. 48.) After conducting extensive discovery, the Court afforded both parties the opportunity to file supplemental briefs in support

1

of their claims. (Doc. No. 61.) Each party then filed supplemental memoranda. (Doc. Nos. 69, 71, 77.)

In 2015, Plaintiff signed up to become a DISH customer. He signed two contracts: (1) a DISH'n It Up Plan Agreement ("Agreement"), and (2) a Residential Customer Agreement. When he signed the former Agreement, he provided his telephone number, ending in 9968 ("9968 number"), to DISH. (Doc. No. 28 at 6.) The Agreement stated:

> By signing above, you authorize DISH and/or any debt collection agency and/or debt collection attorney hired by DISH, to contact you regarding your DISH Network account or to recover any unpaid portion of your obligation to DISH, through an automated or predictive dialing system or prerecorded messaging system, at the phone number (including any cellular phone number), or other contact information you have provided or subsequently provide to DISH. You understand that you do not need to provide a cellular phone number to receive DISH services.

(Doc. No. 28-7 at 3.) On February 20, 2017, DISH assigned Ruby's account to Convergent for debt-collection purposes. (Doc. No. 72-2 at 2-6.) Subsequently, Convergent called Ruby at his 9968 number sixty-four times between February 22, 2017 and May 8, 2017, attempting to collect the money he allegedly owed DISH. (Doc. No. 72-4 at 14-17.) Each call was placed using a LiveVox voice portal, which is an automated telephone dialing system ("ATDS"). (See Doc. No. 72-5.)

In its Motion, DISH argues that it is entitled to summary judgment because (1) Plaintiff consented to be contacted by DISH and Convergent by signing the Agreement; (2) DISH does not have an agency-principal relationship with Convergent, and is therefore not liable for Convergent's acts; and (3) the evidence does not show that Convergent used an ATDS, which is prohibited by the TCPA. The Court will address each argument.

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Smathers v. Multi-Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002); see also Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. Id. at 252.

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Prowel v. Wise Bus. Forms, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000); see also Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 665 (3d Cir. 2002).

The TCPA, 47 U.S.C. § 227, provides in relevant part:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA, in relevant part, makes it unlawful "for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A).

1. **Although Plaintiff Consented To Be Contacted By DISH and Convergent By Signing the Agreement, There Is a Genuine Issue Of Material Fact As To Whether He Revoked That Consent.**

It is permissible under the TCPA to place a call to a cellular phone using an ATDS or artificial or prerecorded voice if the caller has the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A). Although it is undisputed that Ruby originally consented to be called by DISH and Convergent by signing the Agreement, there is a factual dispute as to whether he revoked that consent and when he did so. Consumers can revoke their consent orally. Gager v. Dell Fin. Servs. LLC, 727 F.3d 265, 272 (3d Cir. 2013).

In his affidavit, dated November 24, 2018, Ruby states that he instructed DISH representatives to stop calling. (Doc. No. 72-1 ¶ 8.) In his deposition taken on July 2, 2018, Ruby testified that he told a caller, "[p]lease do not call me about this anymore." (Doc. No. 28-4 at 36:22-25.) However, there is nothing in Convergent's account notes to show that Ruby ever told them not to contact him. (See Doc. Nos. 69-5, 69-6.) An affidavit signed by Amanda Hammond, a litigation support specialist for Convergent, dated March 8, 2019, states that it is Convergent's regular business practice to prepare, maintain, and keep all account note records of all communications related to each customer's accounts. (Doc. No. 69-3 ¶ 3.) This includes making account notes at the time of the event. (Id.) Therefore, there is a factual issue dispute as to when and if Ruby revoked his prior express consent. Gillard v. Receivables Performance, Mgmt., LLC, No. 14-2392, 2015 WL 3456751, at *10-11 (E.D. Pa. June 1, 2015) (denying summary judgment on a prior express consent claim of a TCPA case where the plaintiff testified that he was "sure [he] had" told defendant to stop calling him, yet there was nothing in defendant's account notes to show that plaintiff ever told them not to contact him).

3

### 2. There Is a Genuine Dispute of Fact Over Whether DISH Had An Agency Relationship With Convergent.

Before discussing the factual dispute regarding Convergent's use of an ATDS, it is necessary to address the parties dispute as to whether DISH is liable for calls made by Convergent due to the existence of an agency relationship. An agent can bind its principal if the principal gives the agent actual or apparent authority. Richardson v. John F. Kennedy Memorial Hosp., 838 F. Supp. 979, 985 (E.D. Pa. 1993) (finding an agency relationship where a hospital's bylaws vested its president and executive director with authority to enter into contracts on the hospital's behalf). Actual authority can be express or implied. Id. Express actual authority is the authority expressly granted to an agent by his principal. Id. Implied actual authority refers to the authority that is necessary, proper, and usual in the exercise of the agent's express authority. Id. Apparent authority exists where the principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise. Id.

In a recent TCPA case, Klein v. Commerce Energy, Inc., the Court noted that vicarious liability due to the existence of an agency relationship depends on the facts and circumstances of each case, and is appropriate for a jury to decide at trial. 256 F. Supp. 3d 563, 584 (W.D. Pa. 2017). Although the Court granted summary judgment on other grounds in Klein, it addressed the parties' arguments on vicarious liability and decided that granting summary judgment on this additional ground was inappropriate because a reasonable jury could conclude defendant's debt collection agency exercised apparent authority on its behalf. It therefore could decide an agency relationship existed.

Similarly here, a jury could find that an agency relationship exists between DISH and Convergent. It appears DISH gave Convergent the actual and apparent authority to collect debt on its behalf. DISH's corporate designee, Shannon Picchione, testified in her sworn oral deposition, that DISH retained Convergent to call its customers to collect debts owed to DISH. (Doc. No. 72-3 at 11:4-25.) Further Plaintiff stated in his affidavit that he received calls from representatives who said they were "calling on behalf of DISH." (Doc. No. 72-1 ¶ 7.) If DISH engaged in the conduct described, it may be vicariously liable as the principal for any of Convergent's alleged violations of the TCPA. This is a question for the jury because DISH disputes that it had an agency relationship with Convergent.

### 3. There Is a Genuine Issue of Material Fact As To Whether Convergent Used An Automated Telephone Dialing System.

If Convergent is found to be an agent of DISH, then a factfinder must decide whether Convergent made calls to Plaintiff using an ATDS. The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In a 2003 Order, the Federal Communications Commission extrapolated that the TCPA's statutory language and legislative history showed that the central function of an ATDS is "the capacity to dial numbers without human intervention." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14091-92, ¶ 132 (F.C.C. June 26, 2003). Telephone systems

4

BY THE COURT:

/s/ Joel Slomsky
JOEL H. SLOMSKY, J.

---

that can dial without human intervention from a pre-programed list of telephone numbers fall within TCPA's definition of ATDS. Id. The Third Circuit has held that the TCPA's language is to be construed "broadly to effect its purpose." Lesher v. Law Offices of Mitchell N. Kay, P.C., 650 F.3d 993, 997 (3d Cir. 2011).

Convergent's records show that the dial source of the calls made to Plaintiff was a "LiveVox" service. (Doc. No. 69-6 at 2-5.) The LiveVox system is an automatic dialer that relies on numbers being loaded from a list. (Doc. No. 72-5.) It can be set to make a number of calls with a designated wait period between calls to a consumer. (Id.) The system allows businesses to program the dialer to independently make calls at a set frequency to a list of numbers without requiring a human to prompt each call. (Id.) Considering the TCPA with the requisite level of broadness, the LiveVox appears to be an ATDP for the purposes of determining TCPA liability.

There is a factual dispute as to whether Convergent used the LiveVox to contact Plaintiff. In his affidavit, dated November 24, 2018, Plaintiff stated that "on instances where a DISH representative/agent did come on the line, the representatives/agents disclosed that they were calling on behalf of DISH . . . ." (Doc. No. 72-1 ¶ 7.) He also stated that he "instructed DISH's representatives/agents to stop calling . . . ." (Id. ¶ 8.) Further, in his deposition, he testified that he spoke to a male on the phone. (Doc. No. 69-4 at 38:2.) He did not indicate when he received these calls. (Doc. No. 69-4 at 41:11-16.) He did say, however, that he told a person, "please do not call me anymore." (Doc. No. 28-4 at 7:22-24.)

As noted, Convergent's records show that all calls to Plaintiff were made using a LiveVox system as the "dial source." (Doc. No. 69-6 at 2-3.) The distinguishing feature of a LiveVox call, however, is that it is generated by an automatic dialer. If Convergent called Plaintiff using the LiveVox, Plaintiff would not have spoken to an actual person. Accordingly, the parties have offered contradicting evidence as to whether Convergent used its LiveVox system to call Plaintiff in violation of the TCPA. This requires a credibility determination that must be submitted to the factfinder. Boyle v. Cty. Of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) ("[A]t the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder.")

For all of these reasons, Defendant's Motion for Summary Judgment (Doc. Nos. 28, 69) will be denied.

5